UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELIJAH MILLER,

    Plaintiff,

v.                                                                        Case No. 8:25-cv-1640-KKM-NHA

GLOBAL ELECTRONIC TESTING
SERVICES, d/b/a Global ETS, LLC,

    Defendant.

_____

# ORDER

Elijah Miller and Global Electronic Testing Services (GETS) sue each other. Miller sues for unlawful discrimination based on race and retaliation. Compl. (Doc. 1). GETS counterclaims for violations of the Defend Trade Secrets Act (DTSA), Florida's Uniform Trade Secrets Act (FUTSA), breach of the parties' non-compete agreement, and breach of the parties' non-disclosure agreement. Countercls. (Doc. 13). GETS moves to preliminarily enjoin Miller from further violations of his agreements, continuing to work for his current employer, disclosing GETS's trade secrets, proprietary, and confidential information, and soliciting GETS's customers, vendors, and employees. Mot. for Prelim. Inj. (MPI) (Doc. 23) at 1. The parties agree that an evidentiary hearing is unnecessary. (Doc. 30). Because GETS fails to persuade that

irreparable harm will follow in the absence of a preliminary injunction, I deny the motion.

I.  BACKGROUND

GETS is an "electronic component test lab specializing in counterfeit component detection, authentication, and quality testing." Tang Aff. (Doc. 23-1) ¶ 3. GETS also provides warehousing, logistics solutions, electronic component re-tinning, and related services. *Id.* GETS markets its services worldwide and has an international customer base. *Id.* ¶ 5.

GETS employed Miller as a Sales Development Representative, managing more than 300 customer accounts during his employment. *Id.* ¶ 13. One such customer was Pacific Component Xchange, Inc. (PCX). *Id.* ¶ 17. Through his role at GETS, Miller met the CEO of PCX, Gilles Aouizerat. *Id.* Miller and Aouizerat agreed to open a competing testing lab called The Lab Worldwide, LLC (Worldwide). *Id.* During his employment at GETS, Miller executed a non-compete agreement and a non-disclosure agreement. *Id.* ¶¶ 14–15. On December 19, 2024, Miller resigned from GETS to take a job at Worldwide. *Id.* ¶¶ 16, 18. In June 2025, Miller identified his job at Worldwide as Vice President of Sales and Business Development. *See id.* ¶ 24; *id.* Ex. 4 at 24.

According to their websites, Worldwide and GETS offer many of the same services and tests. *Id.* ¶¶ 20–22. During his employment at GETS, Miller

2

had access to sensitive testing processes and procedures as well as proprietary and alleged trade secret information about GETS's customers. *Id.* ¶¶ 13, 20.

Miller filed his complaint in this Court on June 24, 2025. Compl. GETS asserted its counterclaims on July 31, 2025. Countercls. On November 21, 2025, GETS moved for a preliminary injunction. MPI. Miller opposes. Resp. (Doc. 25). After receiving leave to do so, GETS replied to Miller's opposition. Reply (Doc. 29).

## II.     LEGAL STANDARDS

To receive a preliminary injunction, a movant must establish (1) "a substantial likelihood of success on the merits"; (2) "irreparable injury" without an injunction; (3) "the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam); *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Since "[a] preliminary injunction is an extraordinary and drastic remedy," courts are not to grant it "unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (citation modified). Accordingly, "[f]ailure to show

any of the four factors is fatal." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

### III.   ANALYSIS

Because GETS fails to persuade that it will suffer an irreparable injury in the absence of a preliminary injunction, I need not consider the other factors. *See Siegel*, 234 F.3d at 1176 ("[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.").

A showing of irreparable injury must be "neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citation modified). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Id.* A former employee's breach of a restrictive covenant and "mere presence" as a competitor does not rise to the level of irreparable injury. *See TransUnion Risk & Alt. Data Sols., Inc. v. Challa*, 676 F. App'x 822, 825 (11th Cir. 2017) (per curiam).

To show that it faces irreparable injury, GETS relies primarily on two presumptions of irreparable injury. The first is found in § 542.335(1)(j), Florida Statutes, which states that "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." The second presumption purportedly

4

arises "when a party misappropriates or intends to misappropriate trade secret information." *See* MPI at 17. Neither presumption applies in federal court. Florida's presumption of irreparable harm for breach of covenants not to compete, codified by § 542.335(1)(j), "conflicts with traditional federal equity practice" because it "lifts the burden of establishing irreparable harm from the movant's shoulders and shifts it to the nonmovant." *Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 466 (M.D. Fla. 2022). Accordingly, that presumption "does not govern in a federal diversity action for a preliminary injunction." *Id.* And the supposed presumption in favor of irreparable harm for trade secret misappropriation rests on even shakier ground: no statute, state or federal, creates such a presumption, and no binding judicial decision has ever recognized one. *See Castellano Cosm. Surgery Ctr., P.A. v. Rashae Doyle, P.A.*, No. 21-cv-1088, 2021 WL 3188432, at *8 (M.D. Fla. July 28, 2021). As before, I "will not create a presumption of irreparable harm" for trade secret misappropriation. *Id.*

Even if the presumption found in § 542.335 did apply, GETS has not satisfied its preconditions. Section 542.335(1)(j) also states that "[n]o temporary injunction shall be entered unless the person seeking enforcement of a restrictive covenant gives a proper bond, and the court shall not enforce any contractual provision waiving the requirement of an injunction bond or

5

limiting the amount of such bond." § 542.335(1)(j), Fla. Stat. GETS does not address this issue in its motion and has not offered to post a proper bond.

The only attempt GETS makes to demonstrate irreparable harm outside of the presumptions is the conclusory statement that it "continues to face the loss of customers and reputational damage on a daily basis as Worldwide markets itself using [GETS's] proprietary methods and data. Once those materials are in a competitor's possession, the competitive advantage built over 12 years is permanently destroyed." MPI at 18. As it often did throughout its motion, GETS fails to point to any evidence. *See id.* Although GETS identifies no case law in support of this argument, the Eleventh Circuit has occasionally affirmed that the loss of good will and customers might amount to irreparable harm. *See, e.g.*, *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991).

But there is no evidence that GETS has lost any customers to Worldwide, and the only evidence that Worldwide is using GETS's "proprietary methods and data" are conclusory, hearsay allegations in the affidavit of Dan Tang, GETS's CEO. *See, e.g.*, Tang Aff. ¶ 25 ("Miller provided Worldwide with proprietary, confidential, trade secret information . . . [GETS] IT personnel discovered that . . . Miller extracted corporate emails and proprietary information . . . to a personal drive" and "accessed proprietary information outside his authorized scope of employment including proprietary test

6

procedures."); *id.* ¶ 27 ("Ms. Altenburg has since reported Mr. Miller's employment with Worldwide, including his use of [GETS] proprietary and trade secret information at Worldwide.").[1]

To begin, "[t]he 'mere presence' of a competitor—which of course raises the possibility of losing customers—'does not rise to the level of irreparable injury.'" *Lottery.com, Inc. et al., v. John J. Brier, Jr. et al.*, No. 8:23-CV-2594-KKM-TGW, 2024 WL 6960277, at *4 (M.D. Fla. Feb. 16, 2024) (citing *Blue-Grace*, 340 F.R.D. at 465). Further, Aouizerat swears that Worldwide "has not performed commercial work" other than "one training job from a long-standing industry contact." Aouizerat Aff. (Doc. 25-1) ¶ 10. Likewise, Miller states that "Worldwide is still in the development and training phase" and "is not yet certified to conduct customer business." Miller Aff. (Doc. 25-2) ¶ 10. Thus, it would be speculative to find irreparable harm based on GETS's conclusory

---

[1] Even if this sufficed for irreparable harm from misappropriation of trade secrets, I find that GETS has not demonstrated a substantial likelihood of success on its misappropriation claims. Although, "at the preliminary injunction stage, a district court may rely on affidavits and hearsay materials," it may do so only "if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (citation modified). Further, "vague or conclusory affidavits are insufficient to satisfy the plaintiff's burden," and "affidavits based on personal knowledge are accorded more weight than affidavits based upon mere belief or hearsay." *Palmer v. Braun*, 155 F. Supp. 2d 1327, 1331 (M.D. Fla. 2001), *aff'd*, 287 F.3d 1325 (11th Cir. 2002). GETS's evidence is unpersuasive, particularly in the light of the affidavits from Aouizerat, Miller, and the consultant who developed Worldwide's testing procedures. All three swear to facts of which they have personal knowledge and that convincingly rebut GETS's conclusory allegations of misappropriation. *See* (Docs. 25-1, 25-2, 25-3).

statement that it faces "the loss of customers and reputational damage." *See Gen. Contractors*, 896 F.2d at 1285.

Further, as Miller avers, GETS's own actions undermine its arguments for irreparable harm. *See* Resp. at 14. GETS sold PCX the equipment that it needed to start Worldwide after PCX's CEO informed GETS that it "intended to open a testing lab." *Id.*; Aouizerat Aff. ¶ 4. Although GETS claims that PCX did not make clear that the testing lab would also be a competitor as opposed to just an in-house capability, *see* Reply at 8, that possibility always existed. If potential competition from another lab truly threatened irreparable harm, GETS likely would have hesitated to sell the equipment that would enable another company to start a competitor.

Additionally, in the face of supposed irreparable harm, GETS waited more than five months to move for a preliminary injunction. GETS knew that Miller worked at Worldwide since at least June 13, 2025. *See* (Doc. 23-1) at 23–26. GETS brought counterclaims on July 31, 2025, and included most of the same factual allegations regarding Miller's employment at Worldwide that it makes in its motion. *Compare* Countercls. ¶¶ 18–22, 46, 55–57, 65–67, 69, 82–86, *with* MPI at 4–7. Yet, GETS did not move for this injunction until November 21, 2025. GETS provides no explanation for this delay. Thus, GETS's unexplained delay alone is sufficient to find that it does not face irreparable harm. "A delay in seeking a preliminary injunction of even only a

8

few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248–49 (11th Cir. 2016) (affirming the denial of a motion for a preliminary injunction because of a movant's unexplained five-month delay).

## IV.   CONCLUSION

Because GETS has not carried its burden of persuasion to show an irreparable injury, I **DENY** its Motion for Preliminary Injunction (Doc. 23).

**ORDERED** in Tampa, Florida, on January 6, 2026.

Kathryn Kimball Mizelle
United States District Judge